UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPH WADE NUCCIO | CIVIL ACTION NO. |
| Plaintiff, | |
| v. | COMPLAINT |
| | JURY TRIAL DEMAND |
| SHELL PIPELINE COMPANY LP | |
| Defendant | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act, as amended ("ADA") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Joseph Wade Nuccio ("Plaintiff" or "Nuccio"), who was adversely affected by such practices.

As alleged with greater particularity in the Statement of Claims below, Defendant Shell Pipeline Company LP ("Defendant" or "Shell") discriminated against Nuccio when it demoted him because of his disability. Additionally, Defendant discriminated against Nuccio when it forced him to undergo an eye examination, which was a prohibited medical inquiry/exam under the ADA.

## JURISDICTION AND VENUE

1.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343

and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f) (1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f) (1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.

The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Louisiana.

## PARTIES

3.

Plaintiff is a person of majority age residing in Laplace, Louisiana.

4.

At all relevant times, Defendant has continuously been a partnership domiciled in the State of Delaware with its principal business office in Houston, Texas. Shell has its principal business establishment in Louisiana in the city of Baton Rouge and is licensed to do business within the State of Louisiana. Shell has continuously had at least 15 employees.

5.

At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e (g) and (h).

6.

At all relevant times, Defendant has been a covered entity under Section 101(2) of the

ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7.

At least since May 2013, Defendant has engaged in conduct in Norco, Louisiana which violates the Title I of the Americans with Disabilities Act, as amended ("ADA").

8.

More than thirty (30) days prior to the institution of this lawsuit, Nuccio filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the ADA by Defendant.

9.

On May 22, 2018, the EEOC issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

10.

The EEOC engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11.

The EEOC was unable to secure from Defendant a conciliation agreement acceptable to the EEOC.

12.

On October 22, 2018, the EEOC issued a Notice of Conciliation Failure.

13.

All conditions precedent to the institution of this lawsuit have been fulfilled.

14.

Nuccio has at all times relevant been a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§12102 and 12111(8).

15.

Defendant demoted Nuccio because of his actual or perceived impairment, monocular vision.

16.

Defendant owns and operates 7 tank farms across the U.S., and transports more than 1.5 billion barrels of crude oil and refined products annually through 3800 pipeline miles across the Gulf of Mexico and 5 states.

17.

Defendant hired Nuccio on September 16, 1996 as a Maintenance Technician assigned to the Norco Terminal in Norco, Louisiana.

18.

Nuccio was given a physical as part of his hire package. He was also given an eye exam. Every person that was on the hiring team was aware that Mr. Nuccio was blind in his left eye. Mr. Nuccio has never made any effort to hide his monocular vision impairment.

19.

The Maintenance Technician duties included driving pickup trucks, fork lifts and small

boats. While employed as a Maintenance Technician and prior to the company restricting his driving of company vehicles, Nuccio drove the company pickup truck from Norco to several locations along the pipeline to perform his maintenance duties. Most destinations were 5, 10, or 15 miles away. The furthest destination that Nuccio drove to was Convent, Louisiana, which is 31 miles away. He only drove to Convent 2 to 3 times per year.

20.

Nuccio's vision impairment substantially limits his major life activity of seeing.

21.

Shell regarded and still regards Nuccio as having a substantially limiting visual impairment.

22.

Nuccio's monocular vision is a disability under the ADA.

23.

Shell was aware for many years that Nuccio was blind in one eye.

24.

On May 13, 2013, Nuccio was involved in an accident in the company vehicle which was not caused by his visual disability.

25.

After this accident Shell sent Nuccio to Dr. Fitko, the company's doctor, to undergo vision testing.

26.

Shell had no reasonable, objective basis to suspect that the accident had been

caused by Nuccio's visual disability.

27.

Shell's company doctor- an internist, not an eye doctor- recommended that Nuccio be restricted from driving any company vehicle.

28.

Nuccio's eye specialist provided a statement which confirmed that Nuccio was not restricted from driving the type of pickup truck driven by the Nuccio as a Maintenance Technician.

29.

In June 2013 Shell's restricted Nuccio from driving any company vehicle. After this restriction, Wylie Stice, Craft Manager, tried to get Nuccio other jobs, including a job working in the Geismer plant. Nuccio was not selected for this position.

30.

During 2014, Dr. Fitko changed his opinion about Mr. Nuccio not being able to drive a company vehicle.  The revised company position was that Mr. Nuccio could drive a company vehicle inside the plant.

31.

Although the company claims that it accommodated Nuccio with a driver in the employ of a contractor by picking Nuccio him up from his house for any jobs, no driver ever picked up Nuccio to take him to a job site.  Nuccio always used his own vehicle.

32.

The company also restricted Nuccio from driving his personal vehicle during company

hours, from 6 a.m. to 3 or 4 pm.

33.

In order to perform his job duties Nuccio drove his private vehicle approximately once per week to his off-site job assignments either before working hours or during his lunch break. Nuccio would take the tools he needed with him in his private vehicle.

34.

During this period Shell encouraged Nuccio to apply for other positions. Nuccio did apply for several positions, but he was not selected.

35.

In November or December 2014, Nuccio's position was made available on Open Resources. Nuccio bid for his own job, but he did not get it. Justin Williams was selected for Nuccio's job and Nuccio trained Williams to do Nuccio's job.

36.

In the beginning of February 2015, Wylie Stice, Craft Manager, and Wayne Hansen, Nuccio's supervisor, met with Nuccio and told him that he was demoted to refinery operator. They told Nuccio that if he did not take this demotion, he would be terminated.

37.

Nuccio accepted his demotion, which was effective on February 14, 2015.

38.

Although Nuccio had three automotive accidents over a twelve (12) year period, during his 20-year employment with Shell, two of the accidents were minor. Nuccio had two (2) accidents prior to the one in May 2013. Upon information and belief, they cost the company less than $400 each.

39.

Although the Nuccio's third accident on May 13, 2013, was serious and caused substantial damage, no one was injured.

40.

Shell treated non-disabled employees, in cases of more severe automotive accidents, better than it treated Nuccio. Other, non-disabled employees were involved in very serious accidents -some resulting in fatalities -but they were not fired or demoted. One non-disabled employee who was involved in an accident on October 10, 2007, was subsequently arrested after an individual was killed, and was subsequently promoted by Shell.

41.

Nuccio was able to perform the essential functions of his job with accommodation.

42.

Shell failed to engage in an interactive process with Nuccio to determine what reasonable accommodation, if any, was available to allow Nuccio to perform the essential functions of his job.

43.

Nuccio is not restricted by the Department of Motor Vehicles in driving non-

commercial trucks, such as the one he drove in his original position. The types of trucks Nuccio was not allowed to drive pursuant to the Nuccio's eye specialist were large commercial vehicles - which he did not have to drive in his position. The only kind of truck driven by Nuccio as a technician was a pick-up truck. There was no need to "accommodate" Nuccio as he could perform the "essential functions of driving" the company trucks without the need for any modification of his duties.

44.

Shell's requiring Nuccio to undergo an eye exam after the subject accident was an illegal medical examination or inquiry. It was not based on reasonable, objective information and was not justified by business necessity or job-relatedness.

45.

Shell unlawfully demoted Nuccio because of his disability.

46.

Defendant has employees without disabilities that have had more accidents, with a higher cost of damage, and in a shorter time frame than Nuccio.

47.

Upon information and belief Andy Wilson, an employee with Shell Pipeline, totaled a vehicle in 2014. This accident was his fault. After the accident he was not sent to get a sight evaluation.

48.

Upon information and belief two Shell employees had accidents that resulted in a fatality. The first is Mr. Matthew Sherburne. Mr. Sherburne is a projects engineer in Houston. He still

drives a company vehicle. The second is Mr. Donald Labat. Mr. Labat is an operations supervisor. He still drives a company vehicle. Unlike these two (2) Shell employees, Mr. Nuccio has never had an accident that resulted in a death. Neither of these Shell employees were sent for an eye examination.

49.

Defendant's policy and/or practice of forcing Nuccio to undergo an eye exam is an illegal medical inquiry/exam prohibited under the ADA. 42 USC§12112(d)(4)(A).

50.

The practices complained of herein have deprived Nuccio of equal employment opportunities by demoting him on the basis of his disability which violates the ADA.

51.

The unlawful employment practices complained of herein were intentional.

52.

The unlawful employment practices complained of herein were, and continue to be, committed with malice or with reckless indifference to Nuccio's federally protected rights.

53.

The unlawful employment practices complained of herein have caused Nuccio to suffer economic injuries, including but not limited to lost wages, as well as non-pecuniary injuries.

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from forcing an individual to undergo an eye exam after an accident without reasonable, objective basis to suspect that the

accident was caused by an employee's visual disability and from illegally discharging an employee who is "disabled" within the meaning of the ADA, and any other employment practice which discriminates on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Nuccio by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant to promote Nuccio or to make him whole by providing him with front pay, in amounts to be determined at trial, to eradicate the effects of Defendant's unlawful employment practices.

E. Order Defendant to make whole Nuccio by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

F. Order Defendant to make whole Nuccio by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional and mental anguish, pain and suffering, humiliation, loss of enjoyment of life, and devastation in amounts to be determined at trial.

G. Order Defendant to pay Nuccio punitive damages for its malicious and reckless conduct, as described hereinabove, in amounts to be determined at trial.

H. Grant such further legal or equitable relief as the Court deems necessary and proper.

11

I. Award attorney fees and costs of this action.

## JURY TRIAL DEMAND

In accordance with Rules 38 and 39 of the Federal Rules of Civil Procedure, the Plaintiff hereby requests a jury on all issues raised in the instant Complaint which may be tried by jury.

Respectfully submitted,

*Victor R. Farrugia*
VICTOR R. FARRUGIA (#19324)

FARRUGIA LAW FIRM, LLC
1340 Poydras Street, Suite 2100
New Orleans, LA 70112
Telephone: (504) 525-0250
Facsimile (504) 293-0651
vfarrugia@farrugialawfirm.com

REGISTERED AGENT
FOR SERVICE OF
PROCESS:

CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816