UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSEPH WADE NUCCIO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-446-WBV-DPC** |
| **SHELL PIPELINE COMPANY, LP** | **SECTION: D (2)** |

### ORDER

Before the Court is Defendant's Motion in Limine to Exclude EEOC Determination Letter and Notice of Conciliation Failure From Evidence at Trial.[1] The Motion is opposed.[2] After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED in part** and **DENIED in part.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

This matter arises from a claim of discrimination in violation of the Americans With Disabilities Act, as well as Title I of the Civil Rights Act of 1991. Joseph Wade Nuccio (hereinafter, "Plaintiff") alleges that he was hired by Shell Pipeline Company, LP (hereinafter, "Defendant"), on September 16, 1996, as a Maintenance Technician assigned to the Norco Terminal in Norco, Louisiana.[3] As part of the hiring process, Plaintiff was given a physical and an eye exam.[4] Plaintiff alleges that everyone on the hiring team knew that he was blind in his left eye and that he has never made any effort to hide his monocular vision impairment.[5] Maintenance Technician duties

---

[1] R. Doc. 88.
[2] R. Doc. 95.
[3] R. Doc. 1 at ¶ 17.
[4] *Id.* at ¶ 18.
[5] *Id.*

included driving pickup trucks, fork lifts, and small boats, and Plaintiff drove the company pickup truck to perform his maintenance duties during his employment as a Maintenance Technician.[6]  Plaintiff claims that Defendant was aware of his disability for many years.[7]

On May 13, 2013, Plaintiff was involved in an accident in the company vehicle, which he alleges was not caused by his visual disability.[8]  After the incident, Defendant sent Plaintiff to undergo vision testing with the company doctor.[9] Following that eye examination, Defendant's company doctor recommended that Plaintiff be restricted from driving company vehicles.[10]  Plaintiff alleges that in June 2013, Defendant restricted him from driving any company vehicle, despite Plaintiff's eye specialist providing a statement that Plaintiff was not restricted from driving pickup trucks.[11]  Sometime during 2014, Defendant revised its position and allowed Plaintiff to drive a company vehicle inside the plant, but restricted Plaintiff from using his personal vehicle during company hours.[12]  Defendant encouraged Plaintiff to apply for other positions within the company, which he did, but he was not selected for any other positions.[13]  In February 2015, Plaintiff was demoted to refinery operator and was advised that, should he refuse that position, he would be terminated.[14]  Plaintiff began working as refinery operator effective February 14,

---

[6] *Id.* at ¶ 19.
[7] *Id.* at ¶ 23.
[8] *Id.* at ¶ 24.
[9] *Id.* at ¶ 25.
[10] *Id.* at ¶ 27.
[11] *Id.* at ¶¶ 27 and 28.
[12] *Id.* at ¶¶ 30 and 32.
[13] *Id.* at ¶ 34.
[14] *Id.* at ¶ 36.

2015, and remains in that position today.[15]  Plaintiff claims that Defendant's policy or practice of forcing Plaintiff to undergo an eye exam was prohibited under the American with Disabilities Act, and also deprived Plaintiff of equal employment opportunities by demoting him on the basis of his disability.[16]

On March 2, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter, the "EEOC").[17]  The EEOC issued a Letter of Determination on May 22, 2018, finding reasonable cause to believe Defendant violated the ADA and inviting Defendant to join with the EEOC in informal methods of conciliation.[18] On June 29, 2018, Defendant filed a written response to the EEOC' Letter of Determination, asserting the Letter was flawed, challenging substantive issues in the Letter, and also raising a question of the timeliness of Plaintiff's complaint to the EEOC.[19]  Defendant asserted that Plaintiff's claims under the ADA were untimely because he was notified by Defendant of the need for an eye exam, and underwent same, in June 2013.  On June 13, 2013, two days following that eye exam, Plaintiff was notified that he could not operate company vehicles and that this restriction was permanent.[20]  Defendant argued that the time period for filing a claim with the EEOC began running in June 2013 when the eye exam was first required.  Defendant claimed that the 300-day period for filing a charge with the EEOC expired in mid-April 2014.[21]  As such, Defendant asserted

---

[15] *Id.* at ¶ 37; *See,* R. Doc. 88-1 at p. 2.
[16] R. Doc. 1 at ¶¶ 49 and 50.
[17] R. Doc. 88-1 at p. 2.
[18] R. Doc. 1 at ¶ 9.
[19] R. Doc. 88-4 at p. 1.
[20] *Id.*
[21] *Id.*

that Plaintiff's EEOC charge, filed on March 2, 2015, was untimely by almost a full year.[22]

Defendant further challenged the EEOC's determination that, "there was no reasonable, objective basis to suspect that the accident had been caused by Charging Party's visual disability," advising that the accident which prompted the eye exam was Plaintiff's third at-fault accident while driving company vehicles in a 10-year period.[23] Defendant asserted that all three accidents implicated Plaintiff's vision issue. Defendant also challenged the EEOC's determination that, "The Charging Party's eye specialist provided a statement which confirmed that the Charging Party was not restricted from driving the type of pickup truck driven by the Charging Party as a Maintenance Specialist."[24] Defendant asserted that this statement is not accurate, and that Plaintiff's eye doctor issued an opinion that, "Mr. Nuccio should be restricted from driving the [work] truck due to his visual impairment."[25]

Defendant further pointed out that the statement in the EEOC Determination Letter that "no one was injured" in the May 13, 2013 accident is inaccurate, as the driver of the other truck underwent two back surgeries as a result of the accident, alleged head trauma, sued Defendant, and proposed a significant life care plan.[26] Defendant likewise challenges the accuracy of the EEOC's statement that, "One non-disabled employee who was involved in an accident on October 10, 2007, and was

---

[22] *Id.* at p. 2.
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*

subsequently arrested after an individual was killed, was subsequently promoted."[27] Defendant advised that that employee is not similarly situated to Plaintiff because he did not have two prior at-fault accidents, there was no reason to believe any medical or eye condition caused the accident, and that employee was promoted more than four years after the accident because his job performance warranted promotion.[28] Finally, Defendant challenged the EEOC's use of the word "demoted" regarding Plaintiff, asserting that Plaintiff was not demoted; instead, Plaintiff participated in a search for other positions and accepted the operator position before filing his EEOC charge.[29]

Thereafter, on October 22, 2018, the EEOC issued a Notice of Conciliation Failure.[30] Plaintiff filed the instant Complaint against Defendant on January 22, 2019.[31]

On November 11, 2020, Defendant filed the instant Motion in Limine, seeking to exclude from trial the EEOC Determination Letter (hereinafter, the "Letter") and the EEOC Notice of Conciliation Failure (hereinafter, the "Notice").[32] Defendant asserts that the Letter should be excluded under Federal Rule of Evidence 403 because it contains definitive statements that illegal conduct occurred, which creates a risk of prejudice to Defendant that far outweighs any probative value, and because

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] R. Doc. 1 at ¶ 12.
[31] R. Doc. 1.
[32] R. Doc. 88.

the Letter will usurp the jury's decision-making process.[33]  For example, the Letter provides that:

> The totality of the evidence shows that Respondent's requiring Charging Party to undergo an eye exam after the subject accident was an illegal medical examination or inquiry.  It was not based on reasonable, objective information and was not justified by business necessity or job-relatedness.  The evidence also shows that Respondent unlawfully demoted Charging Party because of his disability.[34]

Defendant argues that the definitive statements made in the Letter are so prejudicial that they outweigh any probative value.  Defendant claims that the Letter contains no other actual probative value because there are no findings of fact included in the Letter that are not otherwise available in the record.[35]  Defendant further asserts that allowing the admission of the Letter will waste time by forcing Defendant to have a "trial within a trial," since Defendant will be forced to defend and correct the significant inaccuracies contained in the Letter while also defending the claims made in the lawsuit.[36]

Regarding the Notice of Conciliation Failure, Defendant argues that it should be excluded under Federal Rule of Evidence 401 because it is not relevant to any issue in the matter.[37]  Defendant claims that because it is not challenging the validity of the conciliation process, the Notice does not tend to make any fact at issue more or less probable, which is a requisite to a finding of relevance for evidence.  Defendant further argues that, should the Court find the Notice relevant under Rule 401, it

---

[33] R. Doc. 88-1 at p. 1.
[34] *Id.* at p. 5 (*quoting* R. Doc. 88-3 at p. 2).
[35] R. Doc. 88-1 at p. 6.
[36] *Id.* at pp. 6-7.
[37] *Id.* at p. 7.

should still be excluded under Rule 403 for the same reasons of prejudice and confusion that support exclusion of the Letter.[38]

Plaintiff opposes the Motion, arguing that the Determination Letter should be allowed under Federal Rule of Evidence 803(8)(A)(iii) and (B) as a public record consisting of factual findings from a legally authorized investigation.[39] Citing Fifth Circuit jurisprudence, Plaintiff asserts that the Letter should be allowed into evidence as a public record exception to the hearsay rule absent a showing by Defendant that it is untrustworthy.[40] Plaintiff also argues that the Letter should not be excluded under Rule 403, reasoning that, "All evidence is prejudicial. Evidence should not be excluded by the Court in a balancing test, attempting to balance the weight of the probative value and the weight of the prejudicial value of a piece of evidence."[41] Plaintiff asserts that there is no risk of confusion because "the EEOC was very thorough and accurate in its findings, and the facts in the Determination Letter are consistent with the facts of the case."[42]

## II. LEGAL STANDARD

The relevant portion of Federal Rule of Evidence 803 states:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness . . .
    (8) **Public Records.** A record or statement of a public office if:
        (A) it sets out:

---

[38] *Id.*
[39] R. Doc. 95. Plaintiff mistakenly references Federal Rule of Evidence 403(8)(A)(iii) and (B), as well as Rule 803, in his Opposition brief. The Court considers the references to Rule 403(8)(A)(iii) to be in error.
[40] *Id.* at pp. 3-4.
[41] *Id.* at p. 9.
[42] *Id.* at p. 10.

> (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.[43]

Under Rule 803(8), "investigative reports made by government agencies are removed from the rule against hearsay unless circumstances indicate untrustworthiness."[44] The party opposing the admission of such a report under Rule 803(8) must prove the report's untrustworthiness.[45]

Here, Defendant has not alleged that the Letter and Notice should be excluded because they are untrustworthy. Instead, Defendant seeks to exclude the Letter and Notice under Federal Rule of Evidence 403, which provides that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.[46]

The Fifth Circuit has drawn a distinction between EEOC "letters of violation" and "letters of reasonable cause," clarifying that, "a letter of reasonable cause is more tentative in its conclusions whereas a letter of violation states the categorical legal conclusion that a violation has taken place."[47] To determine whether evidence should be excluded under Rule 403, "courts must balance the prejudicial effect of the

---

[43] Fed. R. Evid. 803(A)(iii) & (B).
[44] *Cortes v. Maxus Exploration Co.,* 977 F.2d 195, 201 (5th Cir. 1992) (*citing* former Fed. R. Evid. 803(8)(C).
[45] *Moss v. Ole South Real Estate, Inc.,* 933 F.2d 1300, 1305 (5th Cir. 1991) (citing authority).
[46] Fed. R. Evid. 403.
[47] *E.E.O.C. v. Manville Sales Corp.,* 27 F.3d 1089, 1095 (5th Cir. 1994).

evidence against its likely probative value."[48] The Fifth Circuit has instructed that, "Rule 403 determinations are inextricably bound with the facts of a particular case, and they will not be disturbed absent a showing of 'clear abuse.'"[49] The Fifth Circuit has also cautioned that, "[T]he balancing test of Rule 403 should not be misused in such a way that 'would end the presumption that evaluative reports are admissible hearsay under Rule 803(8)(C).'"[50]

### III. ANALYSIS

#### A. The EEOC Determination Letter Must Be Excluded Under Fed. R. Evid. 403.

Turning first to the EEOC Determination Letter, Defendant argues that any probative value, if any exists, is outweighed by the significant risk of prejudice to Defendant if the Letter is admitted into evidence. Relying upon Rule 403, Defendant argues that the Letter should be excluded because of its definitive statements that Defendant has violated the law, which create a risk of significant prejudice. Defendant also argues that the Letter will create jury confusion and cause undue delay due to its factual inaccuracies.[51] Defendant relies on several district court decisions, as well as the Fifth Circuit's decision in *EEOC v. Manville Sales Corporation*,[52] to argue that courts within the Fifth Circuit routinely exclude under

---

[48] *Eason v. Fleming*, No. 92-1390, 1993 WL 13015208, at *4 (5th Cir. 1993) (unpub'd) (citations omitted).
[49] *Id.* (quoting *Shipp v. General Motors Corp.*, 750 F.2d 418, 427 (5th Cir. 1985)).
[50] *Cortes v. Maxus Exploration Co.,* 977 F.2d 195, 201 (5th Cir. 1992) (quoting *Moss*, 933 F.2d 1300, 1308–09 (5th Cir. 1991)).
[51] While the Plaintiff argues that the EEOC Determination Letter is admissible under Rule 803, Defendant has not objected to the document's' introduction under Rule 803. Therefore, the Court tailors its ruling to an analysis under Rule 403.
[52] 27 F.3d 1089 (5th Cir. 1994).

Rule 403 those determination letters that contain definitive statements that the defendant violated the law on the basis that the risk of prejudice from those definitive statements substantially outweighs their probative value.[53] Defendant points to the following statements in the Letter as problematic:

> The totality of the evidence shows that Respondent's requiring Charging Party to undergo an eye exam after the subject accident was an illegal medical examination or inquiry. It was not based on reasonable, objective information and was not justified by business necessity or job-relatedness. The evidence also shows that respondent unlawfully demoted Charging Party because of his disability.[54]

Defendant avers that such definitive statements that violations have occurred are so prejudicial as to outweigh any alleged probative value.

Defendant further asserts that the Letter should be excluded because it contains significant factual inaccuracies, which will create jury confusion and cause undue delay by requiring a trial within a trial of the Letter itself.[55] Defendant contends that if the Letter is introduced it trial, it will insist that its response letter to the EEOC's Letter be admitted, which will then put the EEOC process on trial.[56] Although not mentioned in the Motion, Defendant's response letter to the EEOC points out several inaccuracies in the Letter, including that, "there was no reasonable, objective basis to suspect that the [vehicular] accident had been caused by Charging Party's visual disability."[57] Defendant asserts in its response letter that

---

[53] R. Doc. 88-1 at pp. 4-6.
[54] *Id.* at p. 5 (*citing* R. Doc. 88-3).
[55] R. Doc. 88-1 at pp. 6-7.
[56] *Id.*
[57] R. Doc. 88-4 at p. 2 (*quoting* R. Doc. 88-3 at p. 1).

this statement "is simply not correct."[58] Defendant advises the EEOC that the May 2013 accident was Plaintiff's third at-fault accident while driving company vehicles within a ten-year period.[59] Defendant further emphasizes in its response letter that this accident occurred when Plaintiff was turning left and that Plaintiff is blind in his left eye. Defendant notes that Plaintiff sideswiped a car on his left side in the first accident, and backed into another vehicle due to his lack of depth perception in the second accident.[60]

Defendant further advises in its response letter that the EEOC's following statement in the Letter is incorrect : "The Charging Party's eye specialist provided a statement which confirmed that the Charging Party was not restricted from driving the type of pickup truck driven by the Charging Party as a Maintenance Technician."[61] Defendant points to an opinion from Plaintiff's own eye doctor indicating otherwise, namely, that Plaintiff "should be restricted from driving the truck due to his visual impairment."[62] Defendant also asserts that the EEOC's statement in the Letter that "no one was injured" in the May 13, 2013 accident is "not correct."[63] In support of that assertion, Defendant advises that the driver of the other truck in that (the third) accident "sued Shell for personal injuries, having undergone two back surgeries as a result of the accident and potentially still needing to undergo

---

[58] R. Doc. 88-4 at p. 2.
[59] *Id.*
[60] *Id.*
[61] *Id.* (*quoting* R. Doc. 88-3 at p. 1).
[62] R. Doc. 88-4 at p. 2 (*quoting* R. Doc. 32-6 at p. 2).
[63] R. Doc. 88-4 at p. 2 (quoting R. Doc. 88-3 at p. 2).

a further back surgery. The driver of the other truck also alleged head trauma and proposed a significant life care plan."[64]

Defendant asserts in its response letter that the EEOC's following statement in the Letter is also misleading: "One non-disabled employee who was involved in an accident on October 10, 2007, and was subsequently arrested after an individual was killed, was subsequently promoted."[65] Defendant claims that this statement is misleading because "that employee . . . did not have two prior at-fault accidents, and there was no reason whatsoever to suspect that a medical condition related to eyesight was a factor in his only accident."[66] Defendant notes that the other employee was promoted more than four years after the accident because his performance warranted promotion.[67] Defendant further asserts that the EEOC's use of the word "demoted" in its Letter is inaccurate, as Plaintiff searched for another position within the company and accepted the operator position before filing his EEOC charge.[68] In the Motion, Defendant asserts that the EEOC Determination Letter should be excluded because any accurate facts contained in the Letter that may be probative can be found in other parts of the record.[69] As such, Defendant argues that Plaintiff's primary motive in seeking to admit the Letter is to "show the jury the EEOC's prejudicial conclusive statements and have them adopt the EEOC's determination rather than do the fact finding work they are empaneled to do themselves."[70]

---

[64] R. Doc. 88-4 at p. 2.
[65] *Id.* (*quoting* R. Doc. 88-3 at p. 2).
[66] R. Doc. 88-4 at p. 2.
[67] *Id.*
[68] *Id.*
[69] R. Doc. 88-1 at p. 6.
[70] *Id.*

Plaintiff spends much of his Opposition brief arguing that the Letter is admissible under Fed. R. Evid 803(8).[71] In response to Defendant's arguments regarding exclusion under Rule 403, Plaintiff asserts that, "the risk of confusion is not present because the explanations of [the EEOC's] conclusion are not diametrically opposed to the facts in the record," and that, "the EEOC was very thorough and accurate in its findings, and the facts in the Determination Letter are consistent with the facts of the case."[72] Plaintiff does not address Defendant's specific claims of factual inaccuracies.

Plaintiff relies on and extensively cites the Fifth Circuit's decision in *Harris v. Mississippi Transportation Comm'n.* to support his argument that the Letter is admissible at trial.[73] Plaintiff pointedly notes that Defendant only cited the district court's decision in that case, without reference to the subsequent decision by the Fifth Circuit.[74] Plaintiff is correct in that observation. However, Plaintiff then quotes the following language from the Fifth Circuit opinion, which supports Defendant's arguments regarding exclusion under Fed. R. Evid. 403:

> While this court has recognized that EEOC reasonable cause determinations are "highly probative of discrimination," we have also admonished that such a statement "should not 'be read as leaving district courts without discretion under Rule 403 to exclude such reports if their probative value is substantially outweighed by prejudicial effect

---

[71] R. Doc. 95 at pp. 3-9.
[72] *Id.* at p. 10.
[73] R. Doc. 95 at pp. 9-10 (quoting *Harris*, 329 Fed.Appx. 550 (5th Cir. 2009)).
[74] R. Doc. 95 at p. 9 (citing *Harris v. Miss. Transp. Comm'n*, Civ. A. No. 3:07-cv-366 (S.D. Miss. Dec. 20, 2008)).

or other considerations enumerated in the rule.'" *Manville Sales Corp.,* 27 F.3d at 1095 (cites omitted).[75]

Additionally, while Plaintiff acknowledges that certain citations were omitted from the language quoted above, one such citation omitted is *Eason v. Fleming Cos.*, wherein the Fifth Circuit held that, "[D]espite their probative value, EEOC determinations may be excluded from evidence . . . pursuant to Rule 403 of the Federal Rules of Evidence, where the court determines that their probative value is substantially outweighed by their prejudicial effect."[76]

Such is the crux of Defendant's instant Motion, namely that the probative value of the EEOC Determination Letter is substantially outweighed by its prejudicial effect. Plaintiff concedes that the letter is probative, asserting that, "The EEOC found that there was reasonable cause to conclude that Shell violated the ADA. That is as probative as evidence gets. It would be difficult to outweigh the probative value of this evidence because it is highly probative."[77] Plaintiff then argues that, "Evidence should not be excluded by the Court in a balancing test, attempting to balance the weight of the probative value and the weight of the prejudicial value of a piece of evidence."[78] The Court disagrees. The Fifth Circuit has instructed that, "To determine whether evidence should be excluded pursuant to Rule 403, courts must balance the prejudicial effect of the evidence against its likely probative value."[79] The

---

[75] R. Doc. 95 at pp. 9-10 (quoting *Harris*, 329 Fed.Appx. at 554-55).
[76] *Harris*, 329 Fed.Appx at 554-55 (citing *Eason*, No. 92-1390, 1993 WL 13015208, at *3 (5th Cir. Aug. 24, 1993)).
[77] R. Doc. 95 at p. 9.
[78] *Id.*
[79] *Eason,* No. 92-1390, 1993 WL 13015208 at *4 (citations omitted).

Court has balanced those two interests in light of the facts of this particular case and concludes that the definitive statements included in the EEOC Determination Letter are more akin to a "letter of violation."  As Defendant points out, several sentences (containing such phrases as "illegal medical examination" and "unlawfully demoted") are clear legal conclusions.  Those definitive statements, coupled with the unexplained factual inaccuracies in the Letter, show a substantial risk of prejudice to Defendant if the Letter is admitted at trial.  The Court finds that the risk of prejudice significantly outweighs any probative value of the Letter.  Accordingly, the EEOC Determination Letter is excluded from trial pursuant to Fed. R. Evid. 403.[80]

### B. Defendant Has Failed to Show That the EEOC Notice of Conciliation Failure Must Be Excluded Under Fed. R. Evid. 403.

Defendant very briefly argues that the EEOC Notice of Conciliation Failure should be excluded from trial under Rule 401 because it is not relevant and, additionally, because of the same risk of prejudice and confusion that supports excluding the EEOC Determination Letter.  Plaintiff retorts that Defendant's argument is "nonsensical" because Defendant argues that Plaintiff's claims are untimely, thereby making the Notice, which provides the right to sue, relevant.  After conducting the same analysis and balancing test required under Rule 403, the Court agrees with Plaintiff that the Notice is relevant and that the risk of prejudice to Defendant in its introduction at trial does not outweigh its probative value.  Accordingly, the Notice is not subject to exclusion under Rule 403.

---

[80] Plaintiff suggests an alternative remedy of allowing the Letter into evidence "with minor redactions of references to definitive statements that Shell has violated the law." (R. Doc. 95 at pp. 10-11).  The Court has considered this option, but finds that it does nothing to address or cure factual inaccuracies contained in the Letter.  The Court believes exclusion is appropriate for the reasons stated.

IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion in Limine to Exclude EEOC Determination Letter and Notice of Conciliation Failure From Evidence at Trial [81] is **GRANTED in part** and **DENIED in part.** The Motion is **GRANTED** to the extent that Defendant seeks to exclude the EEOC Determination Letter from evidence.  The Motion is **DENIED** to the extent that Defendant seeks to exclude the Notice of Conciliation Failure from evidence.

New Orleans, Louisiana December 11, 2020.

*[signature: Wendy B. Vitter]*
**WENDY B. VITTER**
**United States District Judge**

---

[81] R. Doc. 88.